The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before the deputy commissioner. The appealing party has shown good ground to reconsider the evidence. The Full Commission REVERSES the Opinion and Award of the deputy commissioner and enters the following Opinion and Award.
**************
The Full Commission finds as facts and concludes as matters of law the following, which were entered into by the parties at the hearing, and also in a Pre-trial Order received by the Commission on 29 April 1994, and in Industrial Commission Form 21, Agreement for Compensation for Disability, approved by the Industrial Commission on 11 February 1993, as
STIPULATIONS
1. At all times relevant to this claim, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act, and an employer-employee relationship existed between plaintiff and defendant-employer.
2. On 19 January 1993 plaintiff sustained an injury by accident arising out of and in the course of her employment with defendant-employer.
3. Plaintiff is a resident of Sampson County, North Carolina.
4. Defendant Carolina Turkeys, Inc., is engaged in the processing of turkeys in and around Wayne County, North Carolina.
5. Liberty Mutual Insurance Company was the compensation carrier on the risk.
6. Plaintiff has not performed a full day's work with defendant-employer since the day before 19 January 1993.
7. Plaintiff was discharged by defendant-employer on or about 24 February 1993.
8. Subject to verification by an Industrial Commission Form 22 Wage Chart, plaintiff's average weekly wage was $256.00.
9. The following medical records are stipulated into evidence:
 (a) Exhibit A — Medical records of Sampson Memorial Hospital (6 pages);
 (b) Exhibit B — Medical records of Joseph R. Thomas, Jr., M.D. (6 pages);
 (c) Exhibit C — Medical records of James R. Dineen, M.D., (3 pages);
 (d) Exhibit D — Medical records and notes of Corazon Ngo, M.D. (2 pages);
 (e) Exhibit E — Medical records of S. Mitchell Freeman, M.D. (5 pages);
(f) Exhibit F — Form 18 filed by plaintiff;
(g) Exhibit G — Form 19 filed by defendants;
 (h) Exhibit H — Form 21 approved by the Industrial Commission;
 (i) Exhibit I — Form 22 prepared by employer for plaintiff;
 (j) Exhibit J — 21 January 1993 and 1 February 1993 statements by plaintiff to employer about injury;
 (k) Exhibit K — Medical records of Eddie Powell, M.D. (7 pages).
10. Plaintiff received temporary total disability compensation benefits in connection with this claim from 20 January 1993 through 17 February 1993.
************
RULINGS ON EVIDENTIARY MATTERS
depositions of Corazon Ngo, M.D.; Joseph Thomas, M.D.; S. Mitchell Freedman, M.D.; James R. Dineen, M.D., and Eddie Powell, M.D., are OVERRULED.
************
The Full Commission rejects the findings of fact of the deputy commissioner and finds as follows:
FINDINGS OF FACT
1. At the time of the hearing in this matter, plaintiff was a sixty year old woman with a high school education. During a substantial portion of the time period of plaintiff's employment with defendant-employer from 19 January 1992 to 19 January 1993, plaintiff was employed as a "gizzard peeler". Plaintiff's employment involved using her hands to place Turkey gizzards over rotating rollers to remove the skin from the gizzards. This area was known as the gizzard table.
2. On 19 January 1993, plaintiff sustained an admittedly compensable injury by accident arising out of and in the course of her employment with defendant-employer when she slipped on some turkey fat and fell onto the cement floor hitting the left side of her head and her right knee. Plaintiff remembers slipping and falling. The next thing she remembers is co-workers surrounding her, helping her to her feet and asking if she was injured.
3. Plaintiff completed her shift at work but later that day presented to the emergency room at Sampson Memorial Hospital complaining of left-sided head pain, right knee pain, and neck pain. The x-rays of plaintiff's head and knee revealed no fractures. Plaintiff was discharged with medication and instructions to keep the knee immobilized and to follow-up with Dr. Joseph R. Thomas, an orthopaedic surgeon. Plaintiff returned to the emergency room on 24 January 1993 still complaining of pain. Plaintiff's right knee was noted to be mildly swollen and she was again instructed to follow-up with Dr. Thomas.
4. Plaintiff received treatment for her right knee from Dr. Thomas on 27 January 1993. His notes indicated that the swelling and bruising in plaintiff's knee had resolved and he released plaintiff to return to work on 1 February 1993.
5. Plaintiff returned to work on 1 February 1993. After working about one and a half hours, plaintiff was removed from work upon advice of the company nurse. Dr. Dineen, the company doctor, sent plaintiff home from work with instructions to stay off her leg and keep it elevated.
6. On 8 February 1993, Dr. Thomas authorized plaintiff to return to light duty work and offered to order an MRI of plaintiff's knee if defendants were concerned with the swelling in the knee. This MRI was never performed.
7. By 9 February 1993 plaintiff's knee was still swollen and Dr. Dineen kept her out of work for another week.
8. Plaintiff's last visit with Dr. Dineen was on 17 February 1993. According to Dr. Dineen's notes, plaintiff's knee was not swollen on that day. Although he considered her knee at maximum medical improvement, he did not release her from his care and instructed her to return one week later. Plaintiff also complained about head pain at this 17 February visit. Dr. Dineen referred plaintiff to defendant's other company physician, Dr. Corazon Ngo, a general practitioner, for treatment of her head pain. Dr. Dineen did not advise plaintiff to return to work if approved by Dr. Ngo.
9. Plaintiff visited Dr. Ngo on defendant's referral that same day. Plaintiff complained of recurrent headaches over the left facial and parietal area of her head and of blurred vision. After an examination Dr. Ngo determined that plaintiff suffered from a contusion and advised plaintiff she could return to work the next day in reference to the condition for which she provided treatment.
10. Plaintiff remained out of work during the rest of the week and returned for her appointment with Dr. Dineen on 24 February 1993. Plaintiff was not allowed to see Dr. Dineen and was instead directed to the resource office where she was informed that she had been discharged for unexcused absences. According to Joan Rouse, manager of the occupational health services department, defendant-employer had contacted Dr. Dineen and had been advised that plaintiff could return to work if released by Dr. Ngo. This release which occurred after plaintiff left the doctor's office had never been communicated to plaintiff.
11. Plaintiff's understanding of her work status was that she should remain out of work until her next scheduled visit with Dr. Dineen on 24 February 1996. Defendant's computer records and Dr. Dineen's office notes support plaintiff's understanding of her no work status. Defendant's computer generated medical record regarding the 17 February visit states, "Seen by Dr. Dineen 2-17-93. No Work. Referred to Dr. Ngo re: head abrasion. . . . (return office visit) 1 week." In addition, Dr. Dineen's inter-office memo of 17 February 1996 indicates "no work" under the work status category and shows his referral of plaintiff to Dr. Ngo for head pain. The "Addendum" on the 17 February 1993 office note that stated that plaintiff could return to work if she was released by Dr. Ngo was added to that record at a later time after plaintiff had gone.
12. Based upon the greater weight of the evidence plaintiff was not told and did not know that she could return to work on 18 February 1993. Plaintiff's conduct in not reporting for work on 18 February 1993 did not demonstrate an unwillingness to work, or an unjustifiable refusal to accept suitable employment. Defendant was aware that plaintiff had previously returned to work as soon as she was released by one physician to return to work even though a second physician had excused her from work.
13. Plaintiff visited Dr. Thomas two more times in April 1993, and again on 3 August 1993, complaining of intermittent pain and swelling. At the 3 August 1993 visit Dr. Thomas indicated that it would be worth while to perform an arthroscopy and debridement of the knee to determine why it had not completely healed.
14. Plaintiff continued to have problems due to recurrent headaches and she returned to Dr. Ngo who referred her to Dr. S. Mitchell Freedman, a neurologist.
15. Plaintiff's first visit with Dr. Freedman was on 8 September 1993. Dr. Freedman's examination of plaintiff did not show any neurological deficits and he scheduled an MRI of plaintiff's brain and cervical spine. He noted, however, that plaintiff was still complaining of knee pain and that she had an antalgic gait due to persistent pain. The MRI of plaintiff's brain did not show any abnormalities, but the MRI of her cervical spine revealed three small central disc herniations which Dr. Freedman concluded were the result of degenerative changes. On 21 September 1993 Dr. Freedman concluded that plaintiff's injury of 19 January 1993 did not appear to have caused any serious intracranial consequences that would limit her work activity and that plaintiff's cervical spine symptoms could be managed with medication and physical therapy. Since Dr. Freedman did not feel that plaintiff's disc herniations warranted surgical intervention he did not schedule any follow up visits for her.
16. Plaintiff first visited Dr. Eddie Nelson Powell, a general practitioner, on 1 July 1993 for treatment of her headaches and right knee. Plaintiff visited Dr. Powell on a self-referral. After an examination, Dr. Powell determined that an MRI of plaintiff's knee should be taken. However, the MRI was not authorized. By 1 February 1994 plaintiff's headaches were resolving but her right knee was swollen with anterior tenderness. At her last examination on 28 July 1994, the pain, tenderness and intermittent swelling in plaintiff's right knee had not resolved. Dr. Powell found that plaintiff had reached maximum medical improvement of the knee in terms of the intervention he could provide, and recommended that an MRI should be provided and plaintiff should thereafter be referred to an orthopedist to further manage her care. During the time of his treatment of plaintiff, Dr. Powell authorized plaintiff to remain out of work and off her feet for extended periods of time until the problem with her knee was diagnosed and treated.
17. The approval on 21 April 1993 of Industrial Commission Form 24, Application of Employer or Insurance Carrier to Stop Payment of Compensation was improvidently granted.
18. The treatment provided to plaintiff by Dr. Powell was reasonably necessary to effect a cure or provide relief and is hereby authorized.
19. Plaintiff has reached maximum medical improvement with respect to the compensable injury to her head. Plaintiff has not reached maximum medical improvement with respect to the compensable injury to her right knee. Defendant has not provided vocational rehabilitation assistance to plaintiff. Defendants have not produced any evidence to show that there are jobs available that plaintiff is capable of obtaining given her skills, abilities and medical limitations.
20. Plaintiff's average weekly wage of $256.00 yields a compensation rate of $170.68.
*************
Based upon the foregoing stipulations and findings of fact, the Full Commission enters the following
CONCLUSIONS OF LAW
1. On 19 January 1993 plaintiff sustained an admittedly compensable injury by accident to her head, neck and right knee arising out of and in the course of her employment with defendant-employer. N.C. Gen. Stat. § 97-2 (6).
2. Plaintiff did not unjustifiably refuse to return to work on 18 February 1993 as she was not advised that she had been released to return to work at said time. Plaintiff is entitled to compensation for disability after 18 February 1993. N.C. Gen. Stat. § 97-32.
3. Plaintiff is entitled to temporary total disability compensation benefits from 18 February 1993 at the rate of $170.68 per week up to the date of the hearing and continuing until she returns to work or until further Order from the Commission. N.C. Gen. Stat. § 97-29.
4. Plaintiff is entitled to payment by defendants of all medical expenses arising from her compensable injury which are reasonably required to give relief from, effect a cure of or would tend to lessen her disability. The treatment provided by Dr. Powell is hereby approved.
5. The Industrial Commission's approval of the Form 24 Application of Employer or Insurance Carrier to Stop Payment of Compensation should be vacated.
***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following
AWARD
1. In addition to compensation already paid and subject to counsel fees, defendant shall pay to plaintiff temporary total disability benefits at the rate of $170.68 per week from 18 February 1993 to the date of hearing and continuing until further Order of the Commission. The amounts that have accrued shall be paid in one lump sum, uncommuted.
2. Defendant shall pay all medical expenses incurred or to be incurred by plaintiff as a result of her injury by accident on 19 January 1993 when bills for same have been submitted and approved through procedures adopted by the Industrial Commission.
3. A reasonable attorney's fee of twenty-five percent (25%) of the accrued compensation due plaintiff herein is approved for plaintiff's counsel and thereafter, plaintiff's counsel shall receive every fourth check. Said attorney's fee shall be deducted from the compensation due plaintiff and paid directly to plaintiff's counsel.
4. Defendants shall pay the costs due this Commission.
IT IS HEREBY ORDERED that the treatment provided to plaintiff by Dr. Powell is AUTHORIZED and further that the Industrial Commission's approval of the Form 24 application is VACATED.
 S/ _________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
S/ _________________ LAURA K. MAVRETIC COMMISSIONER
S/ _________________ COY M. VANCE COMMISSIONER
BSB:be